```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW HAMPSHIRE


- - - - - - - - - - - - - - - - - -
                                   :
MEMBERS OF THE BEEDE SITE GROUP,   :
                                   :
         Plaintiffs,               :
                                   :
    v.                             :    C.A. No. 09-370 S
                                   :
FEDERAL HOME LOAN MORTGAGE CORP.,  :
ET AL.,                            :
                                   :
         Defendants.               :
                                   :
- - - - - - - - - - - - - - - - - -
```

In the matter of:  Motion to Dismiss of Defendant ALNASCO CO., Inc.

MEMORANDUM AND ORDER

William E. Smith, United States District Judge.

This matter is before the Court on the Motion to Dismiss brought by Defendant ALNASCO CO., Inc. (hereinafter "ALNASCO"), alleging that this Court lacks personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2). This large-scale CERCLA[1] litigation concerns government-directed environmental clean-up efforts at a superfund site in Plaistow, New Hampshire ("the Site"). Plaintiffs are members of an association formed in connection with the Beede Waste Oil Superfund Participation Agreement of August 1, 2007. They have undertaken remediation efforts at the Site and seek contribution and other costs from Defendants, who were allegedly

---

[1] Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq.

involved in the disposal of hazardous materials at the Site between the 1920s and 1994, when operations ceased. For reasons explained below, the Court denies ALNASCO's motion.

Defendant ALNASCO CO., Inc., is described in the Amended Complaint as a Pittsfield, Massachusetts, corporation. No additional facts specific to ALNASCO are provided. In the memorandum accompanying its Motion to Dismiss, ALNASCO states that it has no contacts with the State of New Hampshire; it has never owned property or maintained an office there; it has never transacted any business in New Hampshire; nor has it ever advertised there. ALNASCO surmises that Plaintiffs' allegations are based on three hazardous waste manifests that show that it arranged for the disposal at the Site of approximately 7,700 gallons of waste oil from property located at 73 Pleasant Street, Dracut, Massachusetts ("the Dracut property"). All three "Uniform Hazardous Waste Manifests" from the State of New Hampshire list "Ken Nash – site at 73 Pleasant St. Dracut Mass" in the "Generator's Name and Mailing Address" box. The Generator's Certification is signed by Francis Lyons on two manifests, which are both dated April 9, 1986. The third manifest is dated April 10, 1986, and the Certification is signed by Gary Geiger. All three are signed by James Taranto as "Transporter." The contents of the shipments are described as 7,700 gallons of #6 oil and contaminated water.

The explanation for these transactions is set forth in an affidavit submitted by Kenneth M. Nash, current president of ALNASCO, who states that ALNASCO has never been the owner of the Dracut property.  ALNASCO was hired to build and operate a storage facility there.  In turn, it hired a New Hampshire contractor, with a Massachusetts office, to clear debris from the property.  The contractor discovered a concrete tank on the property, filled with water and waste oil.  Without the knowledge of ALNASCO, the contractor transported the waste oil from the property to the Site for disposal.

I.   Standard of Review

When a defendant asserts that the Court lacks the requisite jurisdiction to hale him or her into court, the burden is on the plaintiff to produce sufficient facts to sustain jurisdiction. Johnson v. Shaines & McEachern, P.A., 835 F. Supp. 685, 688 (D.N.H. 1993).  The plaintiff must go beyond the allegations presented in the complaint, and make a prima facie showing of jurisdiction, supported by pleadings and other evidentiary materials.  Id.; Brother Records, Inc. v. Harpercollins Publishers, 141 N.H. 322, 324, 682 A.2d 714, 715 (1996).  In keeping with the traditional approach for motions to dismiss, the Court must accept as true plaintiff's properly-supported evidentiary proffers, and "construe them in the light most congenial to the plaintiff's jurisdictional

claim." <u>Daynard v. Ness, Motley, Loadholt, Richardson & Poole P.A.</u>, 290 F.3d 42, 51 (1st Cir. 2002).

II. Plaintiffs' Proffer

Plaintiffs assert that ALNASCO is subject to the general jurisdiction of the New Hampshire courts because it is registered to do business there. Plaintiffs have produced 1) an Application for Certificate of Authority to Transact Business in New Hampshire, dated November 18, 1958, filed by the A. Leo Nash Steel Corporation; 2) an Application for Registration of Trade Name filed with the New Hampshire Secretary of State's Office on May 8, 1978, stating that A. Leo Nash Steel Corporation is doing business under the name of ALNASCO; 3) an annual report for the A. Leo Nash Steel Corporation filed with the New Hampshire Secretary of State's Office on October 17, 1979; and 4) two registrations with the New Hampshire Corporations Division, one for the A. Leo Nash Steel Corporation and one for ALNASCO, both with a status described as "inactive" and dated June 17, 2010.

Additionally, and more persuasively, Plaintiffs proffer documents shedding light on the ownership of the Dracut property. As background: Kenneth M. Nash, along with A. Leo Nash, Libby S. Nash and E. Melvin Nash, are the original incorporators and officers of the A. Leo Nash Steel Corporation dating back to August 11, 1954. In 1980, the corporation filed Articles of Amendment in New Hampshire, listing Kenneth M. Nash as President, and requesting

that the corporate purpose be changed from steel fabrication to real estate development. On November 25, 1985, the Town of Dracut, Massachusetts, issued two variances to "ALNASCO Company or Kenneth Nash" for 73 Pleasant Street (the Dracut property) having to do with the approved use of the property and the required building setbacks. The hazardous waste manifests indicate that the waste oil was transported for disposal several months later, on April 9 and 10, 1986. A quitclaim deed for the property is dated April 11, 1986, reflecting the sale of the property from Anthony and Mary Demetri to Seth A. Nash, Mitchell P. Nash, and A. Leo Nash, all of Pittsfield, Massachusetts. Finally, a Municipal Lien Certificate from the Town of Dracut, dated December 5, 2001, lists the "Assessed Owner" of the property as "Nash Seth & Mitchell ET ALS" and the "Supposed Present Owner" as "C/O ALNASCO."

Plaintiffs argue that these documents demonstrate that the development of the property was an ALNASCO and Nash family project, and that ALNASCO therefore had control over the property and the waste disposal. Plaintiffs argue further that the demonstrated connection between ALNASCO and clean-up effort at the Dracut property provides sufficient evidence to make a <u>prima facie</u> case that this Court may exercise <u>in personam</u> jurisdiction over ALNASCO.

In a reply memorandum, accompanied by a second affidavit from Kenneth M. Nash, ALNASCO explains that the A. Leo Nash who purchased the property is the grandson of the company's founder,

but he is not an officer of ALNASCO.  Moreover, ALNASCO points out that the records indicate that he and the other Nash family members did not purchase the property until the day after the waste oil was removed.

III. In Personam Jurisdiction

Plaintiffs have filed a five-count complaint.  Two counts are brought under the federal CERCLA statute, which provides the Court with original subject matter jurisdiction, pursuant to 28 U.S.C. § 1331.  When subject matter jurisdiction is based upon a federal question, the Court may exercise personal jurisdiction within the limits imposed by the Fifth Amendment's Due Process Clause.  United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1085 (1st Cir. 1992).  Because there are no concerns over balancing the interests of the state and federal governments, the exercise of personal jurisdiction only requires that the defendant have sufficient minimum contacts with the United States. Id.; Lorelei Corp. v. County of Guadalupe, 940 F.2d 717, 719 (1st Cir. 1991).  If the defendant is served within the United States and its territories, sufficient contacts exist for the exercise of personal jurisdiction.  Lorelei, 940 F.2d at 719.  Once personal jurisdiction is established, the Court may exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

IV.  Proper Service of Process

Although the Court's exercise of personal jurisdiction is broad in federal question cases, the Court's reach is limited by the restrictions imposed by the rules governing service of process. Estates of Ungar v. Palestinian Auth., 153 F. Supp. 2d 76, 87 (D.R.I. 2001).  Fed. R. Civ. P. 4 sets forth the parameters for effective service of process.  Fed. R. Civ P. 4(k)(1)(A) states that service of process establishes personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."

Consequently, the analysis returns to New Hampshire's long-arm statute, N.H. Rev. Stat. Ann. § 510:4.  The New Hampshire Supreme Court has held that its long-arm statute operates to assert jurisdiction over non-residents up to the limit of the U. S. Constitution.  Leeper v. Leeper, 114 N.H. 294, 296, 319 A.2d 626, 627-628 (1974).  Thus, "the constitutional inquiry alone determines whether the court may properly assert personal jurisdiction," or effect proper service, in this case.  Gray v. St. Martin's Press, Inc., 929 F. Supp. 40, 44 (D.N.H. 1996) (citing Sawtelle v. Farrell, 70 F.3d 1381, 1388 (1st Cir. 1995)); see also Adams v. Adams, 601 F.3d 1, 5 (1st Cir. 2010).

V.   Minimum Contacts

The Due Process Clause of the Fourteenth Amendment generally provides the outer limits to this Court's jurisdictional reach. Because fairness is of paramount concern in this analysis, the Supreme Court has held that the exercise of jurisdiction requires at least "minimum contacts" between the defendant and the forum state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980).  General jurisdiction is based on a defendant's "continuous and systematic linkage with the forum state," and may be exercised even in cases unrelated to the defendant's contacts with the forum. Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999).  On the other hand, absent "systematic linkage," the exercise of specific jurisdiction can be authorized if the litigation is sufficiently related to the defendant's activities in the forum state.  Id.

In United Elec., Radio & Mach. Workers, 960 F.2d at 1087, the First Circuit set forth a three-part test for specific jurisdiction to ensure that it meets the standard of "traditional notions of fair play and substantial justice" outlined by the Supreme Court in its landmark decision, Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  First, the litigation must directly relate or arise out of the defendant's contacts with the forum state.  Second, the defendant must have purposefully availed him or herself of the benefits of conducting business in the forum.  And, third, if the

first two prongs are satisfied, the court must evaluate the overall reasonableness and fundamental fairness of bringing the defendant to trial in the forum state. United Elec., Radio & Mach. Workers, 960 F.2d at 1089; Adams, 601 F.3d at 5. Plaintiffs argue that ALNASCO had contacts with New Hampshire sufficient for the exercise of general jurisdiction. However, because the three-part test for specific jurisdiction sets forth the minimum threshold for jurisdiction, the Court will focus on that analysis.

A.  Relatedness

ALNASCO admittedly hired a contractor to clean the Dracut property in connection with development it was planning at the property. Moreover, ALNASCO's president, Kenneth M. Nash, is listed as the generator on the Hazardous Waste Manifests that document the transport and delivery of 7,700 gallons of waste oil and contaminated water from the property to the Site. Plaintiffs have submitted additional evidence showing that ALNASCO or Kenneth Nash sought and received variances from the Town of Dracut for the development of the property, prior to its sale to members of the Nash family. These documents appear to demonstrate that ALNASCO and the Nash family had control over, and possibly an ownership interest in, the Dracut property. If it is established that ALNASCO owned or controlled the Dracut property when the oil storage tank was discovered and hauled away to the New Hampshire

Site for disposal, then ALNASCO's single contact with the forum state is directly related to the claims underlying this litigation.

B.   Purposeful Availment

The First Circuit recently explained the 'purposeful availment' prong of the test as follows, "[T]he defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." Adams, 601 F.3d at 5 (quoting Adelson v. Hananel, 510 F.3d 43, 49 (1st Cir. 2007)).  Even assuming that ALNASCO owned or had control over the Dracut property and directed the disposal of the oil tank, there is no evidence to show that ALNASCO intentionally or 'purposefully' chose a disposal site in New Hampshire.

This same quandary confronted the Court in Branch Metal Processing, Inc. v. Boston Edison Co., 952 F. Supp. 893 (D.R.I. 1996).  In that case, Boston Edison sold old streetlights as scrap metal to a dealer, who in turn sold the material to a Rhode Island metal processor.  When the streetlights were broken down in Rhode Island, PCBs were released that contaminated the soil.  In the CERCLA lawsuit that ensued, the Court found that Boston Edison had sufficient minimum contacts with Rhode Island for the Court's exercise of specific personal jurisdiction because Boston Edison

knew the streetlights might contain PCBs, yet made no effort to restrict the ultimate disposition of the material.

> Boston Edison's head-in-the-sand approach is particularly important in light of the liability scheme set forth in CERCLA. Boston Edison should have known that it would ultimately be liable for the costs of cleaning up the PCBs, should they ever be released into the environment, in any state in which they ultimately came to be disposed. Moreover, Boston Edison should have understood that any litigation arising out of such liability would more than likely be commenced in that state. Thus, Boston Edison's election to place no restriction on the method or place of disposal is tantamount to an affirmative choice to submit to jurisdiction wherever these waste products fouled the environment.

952 F. Supp. at 910. Similarly, ALNASCO hired the contractor to clean the Dracut property and haul off the oil storage tank, yet, presumably, had no knowledge of where the tank would end up. Now it argues that it was unforeseeable that the oil tank would be disposed of in New Hampshire. Like Boston Edison, ALNASCO cannot put its head in the sand in order to avoid responsibility. The Court holds that ALNASCO purposefully availed itself of the privilege of doing business in New Hampshire when it directed the contractor to dispose of the tank.

    C.  Gestalt Factors

In <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 477 (1985), the Supreme Court broke down the 'overall reasonableness and fundamental fairness' prong of the jurisdiction test into multiple areas of inquiry that have come to be known as the Gestalt factors, meaning that no individual factor should be determinative, but that

-11-

multiple inquiries must be balanced and integrated into a whole analysis. These factors are:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 209 (1st Cir. 1994).

Requiring Defendant ALNASCO to travel to New Hampshire, its neighboring state, would impose only a negligible burden. On the other side of the coin, all the other Gestalt factors militate in favor of a New Hampshire forum. Clearly the Plaintiffs, who have already taken on the responsibility of cleaning the Site, have an interest in obtaining effective relief, and they have selected the location of the Site as the forum. The "plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience." Sawtelle, 70 F.3d at 1395. The judicial system's interest in efficiency is served by the selection of a single centralized forum.

New Hampshire's strong sovereign interest in protecting its lands and its citizenry, which it undoubtedly shares with all states in the union, provides it with an indisputable stake in overseeing litigation that will result in the clean-up of a toxic Superfund pollution Site within its boundaries. The compelling

interests of the forum state in an environmental clean-up case were expressed convincingly in a Rhode Island CERCLA case, O'Neil v. Picillo, which pointed out that "the nature and significance of the state's interest may have a bearing on the nature and extent of the necessary contacts."  682 F. Supp. 706, 717 (D.R.I. 1988) (citing Hanson v. Denckla, 357 U.S. 235, 252 (1958)).  The Picillo Court continued,

> Certainly Rhode Island's interest in adjudicating this suit could hardly be more compelling.  In addition to the state's recognized "significant interest in redressing injuries that actually occur within the State," Rhode Island has an extraordinarily strong sovereign interest in providing a forum for actions concerning injury to land within its borders, and for actions which seek recovery of public monies expended to protect such land.

682 F. Supp. at 717-718 (quoting Violet v. Picillo, 613 F. Supp. 1563, 1579 (D.R.I. 1985)).  As for requiring out-of-staters to appear in the forum state, the Picillo Court concluded:

> Additionally, the fact that the non-resident generators operate in a nationally regulated industry increases the significance of the contact with the forum.  As one court has put it, "under CERCLA, a generator-defendant can reasonably anticipate being haled into court in any state in which [its] hazardous substances . . . are found."

Id. at 718 (quoting United States v. Conservation Chem. Co., 619 F. Supp. 162, 249 (D. Mo. 1985)).  For all these same reasons, this Court holds that its exercise of jurisdiction over Defendant is consistent with "traditional notions of fair play and substantial justice," and thus, with the requirements of the Due Process Clause, as set forth in Int'l Shoe, 326 U.S. at 316 (internal

quotation marks and citation omitted).  Consequently, the Court's service of process on Defendant comports with New Hampshire's long-arm statute, N.H. Rev. Stat. Ann. § 510:4, and with Fed. R. Civ. P. 4(k)(1)(A).

VI.  Conclusion

For the reasons stated above, this Court denies Defendant ALNASCO CO., Inc.'s Motion to Dismiss for lack of personal jurisdiction.

It is so ordered.

*/s/ William E. Smith*
William E. Smith
United States District Judge
Date: December 6, 2010