UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

- - - - - - - - - - - - - - - - - - -
MEMBERS OF THE BEEDE SITE GROUP,   :
                                   :
        Plaintiffs,                :
                                   :
    v.                             :   C.A. No. 09-370 S
                                   :
FEDERAL HOME LOAN MORTGAGE CORP.,  :
et alia,                           :
                                   :
        Defendants.                :
- - - - - - - - - - - - - - - - - - -

In the matter of:  Motion to Dismiss of Defendant Diana L. King
d/b/a The Lube King.


MEMORANDUM AND ORDER

WILLIAM E. SMITH, United States District Judge.

        This matter is before the Court on Defendant Diana L. King
d/b/a The Lube King's (hereinafter "King" or "Defendant") Motion to
Dismiss the claims against her in the Amended Complaint, for lack
of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2).
This large-scale CERCLA[1] litigation concerns government-directed
environmental clean-up efforts at a superfund site in Plaistow, New
Hampshire ("the Site").  Plaintiffs are members of an association
formed in connection with the Beede Waste Oil Superfund
Participation Agreement of August 1, 2007.  They have undertaken
remediation efforts at the Site and seek contribution and other
costs from Defendants, who were allegedly involved in the disposal

_____

        [1] Comprehensive Environmental Response, Compensation, and
Liability Act ("CERCLA"), 42 U.S.C. § 9601, et seq.

of hazardous materials at the Site between the 1920s and 1994, when operations ceased.  For reasons explained below, the Court denies King's motion.

Defendant is described in the Amended Complaint as an individual residing in Florida.  King states in an affidavit that she lived in New Hampshire from 1983 to 2000.  Between 1986 and 1998, her late husband, Glenn King, operated an automotive oil-change business in Hampstead, New Hampshire.  The business, known as The Lube King, initially operated as a sole proprietorship, and Defendant served as its bookkeeper.  Although King does not dispute that the business sent waste oil to the Site between 1986 and 1991,[2] she asserts that she had "no responsibility, control or authority" over any of the business operations, including the disposal of waste oil.

In 1995, Glenn King incorporated the business, and both Glenn King and Defendant are listed as incorporators, with Defendant as the corporation's registered agent.  In 1998, Glenn King sold the business, and the couple moved to Florida in 2000.  Glenn King died testate in Florida in 2008, with no probate estate.  Diana King

---

[2] In her memorandum in support of her Motion, King states that Plaintiffs have established the "Relevant Time Frame" as 1986 - 1991, based on "EPA transactional documents."  Plaintiffs note in their responsive memorandum that they concur that The Lube King sent waste oil to the Site during this time period, but do not concede that disposals outside this time frame are not relevant to the litigation.  Since the Site was not shut down until 1994 and The Lube King continued to operate up to (and past) 1994, the Court will also consider relevant material for the years 1991 - 1994.

states that she owns no property in New Hampshire, and has had no contacts in the state since 2000.

I.   Legal Standard

When a defendant asserts that the Court lacks personal jurisdiction to hale him or her into court, the burden is on the plaintiff to produce sufficient facts to sustain jurisdiction. Johnson v. Shaines & McEachern, PA, 835 F. Supp. 685, 688 (D.N.H. 1993).  The plaintiff must go beyond the allegations presented in the complaint, and make a prima facie showing of jurisdiction, supported by pleadings and other evidentiary materials.   Id.; Brother Records, Inc. v. Harpercollins Publishers, 141 N.H. 322, 324, 682 A.2d 714, 715 (1996).  In keeping with the traditional approach for motions to dismiss, the Court must accept as true plaintiff's properly-supported evidentiary proffers, and "construe them in the light most congenial to the plaintiff's jurisdictional claim."  Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002).

II.  Plaintiffs' Proffer

Plaintiffs assert that King lived and worked in New Hampshire during the relevant years.  The Lube King was a family business, with both spouses serving as equal partners.  The Lube King collected waste oil, and disposed of it at the Site, with King participating in those decisions and transactions.  To buttress

their claims, Plaintiffs submit several documents from New Hampshire's public records:

1) An invoice from Beede Waste Oil Corp., dated November 7, 1988,[3] recording a pickup of 950 units of motor oil from The Lube King, signed, "Received by: Diana L. King";

2) A Floating Manifest from Beede Waste Oil Corp., dated August 18, 1989, for 1000 gallons of motor oil generated by The Lube King, and signed by Diana L. King in the "Generator Signature" space;

3) A Uniform Hazardous Waste Manifest from the Commonwealth of Massachusetts, dated April 1, 1990, documenting the disposal of 400 gallons of waste petroleum oils from The Lube King to the Site, with Diana L. King's signature as the Generator in the space following the Generator's Certification;[4]

---

[3] The photocopy is blurry and the year is only partially legible.

[4] The Generator's Certification states the following:

I hereby declare that the contents of this consignment are fully and accurately described above by proper shipping name and are classified, packed, marked, and labeled, and are in all respects in proper condition for transport by highway according to applicable international and national government regulations.

If I am a large quantity generator, I certify that I have a program in place to reduce the volume and toxicity of waste generated to the degree I have determined to be economically practicable and that I have selected the practicable method of treatment, storage, or disposal currently available to me which minimizes the present and future threat to human health and the environment; OR, if

-4-

4) Articles of Incorporation from the State of New Hampshire, filed March 7, 1995, incorporating The Lube King, Inc., with Diana L. King listed as the registered agent, and Glenn and Diana King listed as the incorporators; and

5) The Lube King's annual report, dated May 3, 1996, indicating the President as Glenn King, and Diana L. King as Treasurer, Secretary, Registered Agent and Director.

Plaintiffs argue that these documents demonstrate King's significant role in the business, and provide sufficient evidence to make a <u>prima facie</u> case that this Court may exercise general <u>in personam</u> jurisdiction over King.

III. <u>In Personam</u> Jurisdiction

Plaintiffs have filed a five-count complaint.  Two counts are brought under the federal CERCLA statute, which provides the Court with original subject matter jurisdiction, pursuant to 28 U.S.C. § 1331.  When subject matter jurisdiction is based upon a federal question, the Court may exercise personal jurisdiction within the limits imposed by the Fifth Amendment's Due Process Clause.  <u>United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.</u>, 960 F.2d 1080, 1085 (1st Cir. 1992).  Because there are no concerns over balancing the interests of the state and federal governments,

I am a small quantity generator, I have made a good faith effort to minimize my waste generation and select the best waste management method that is available to me and that I can afford.

-5-

the exercise of personal jurisdiction only requires that the defendant have sufficient minimum contacts with the United States. Id.; Lorelei Corp. v. County of Guadalupe, 940 F.2d 717, 719 (1st Cir. 1991). If the defendant is served within the United States and its territories, sufficient contacts exist for the exercise of personal jurisdiction. Lorelei, 940 F.2d at 719. Once personal jurisdiction is established, the Court may exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

IV.  Proper Service of Process

Although the Court's exercise of personal jurisdiction is broad in federal question cases, the Court's reach is limited by the rules governing service of process. Estates of Ungar v. Palestinian Auth., 153 F. Supp. 2d 76, 87 (D.R.I. 2001). Defendant has not contested service of process. Her affidavit states that she was served personally with "a copy of the Complaint by the Members of the Beede Site on March 5, 2010." For the purpose of this analysis, the Court assumes that King was served in Florida.

Fed. R. Civ. P. 4 sets forth the parameters for effective service of process. Fed. R. Civ P. 4(k)(1)(A) states that service of process establishes personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Consequently, the analysis returns to New Hampshire's long-arm statute, N.H. Rev.

-6-

Ann. Stat. § 510:4.  The New Hampshire Supreme Court has held that its long-arm statute operates to assert jurisdiction over non-residents up to the limit of the U.S. Constitution.  <u>Leeper v. Leeper</u>, 114 N.H. 294, 296, 319 A.2d 626, 627-628 (1974).  Thus, "the constitutional inquiry alone determines whether the court may properly assert personal jurisdiction," or effect proper service, in this case.  <u>Gray v. St. Martin's Press, Inc.</u>, 929 F. Supp. 40, 44 (D.N.H. 1996)(citing <u>Sawtelle v. Farrell</u>, 70 F.3d 1381, 1388 (1st Cir. 1995); <u>see also</u> <u>Phillips v. Prairie Eye Ctr.</u>, 530 F.3d 22, 26 (1st Cir. 2008); <u>Phillips Exeter Acad. v. Howard Phillips Fund, Inc.</u>, 196 F.3d 284, 287 (1st Cir. 1999).

V.   Minimum Contacts

     The Due Process Clause of the Fourteenth Amendment generally provides the outer limits to this Court's jurisdictional reach. Because fairness is of paramount concern in this analysis, the Supreme Court has held that the exercise of jurisdiction requires at least "minimum contacts" between the defendant and the forum state.  <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 291 (1980).  General jurisdiction is based on a defendant's "continuous and systematic linkage with the forum state," and may be exercised even in cases unrelated to the defendant's contacts with the forum. <u>Phillips Exeter</u>, 196 F.3d at 288.  On the other hand, absent "systematic linkage," the exercise of specific jurisdiction can be

authorized if the litigation is sufficiently related to the defendant's activities in the forum state.  Id.

In United Elec., Radio & Mach. Workers, 960 F.2d at 1087, the First Circuit set forth a three-part test for specific jurisdiction to ensure that it meets the standard of "traditional notions of fair play and substantial justice" outlined by the Supreme Court in its landmark decision, Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  First, the litigation must directly relate or arise out of the defendant's contacts with the forum state.  Second, the defendant must have purposefully availed him or herself of the benefits of conducting business in the forum.  And, third, if the first two prongs are satisfied, the court must evaluate the overall reasonableness and fundamental fairness of bringing the defendant to trial in the forum state.  960 F.2d at 1089.  Plaintiffs argue that King had contacts with New Hampshire sufficient for the exercise of general jurisdiction.  However, because the three-part test for specific jurisdiction sets forth the minimum threshold for jurisdiction, the Court will focus on that analysis.

A.   Relatedness and Purposeful Availment

It is obvious that this CERCLA litigation relates to and arises directly from The Lube King's activities in the forum, oil changes, and disposing of the waste oil.  Nor can it be disputed that The Lube King purposefully availed itself of the privilege of conducting business in New Hampshire.  The question is whether King

-8-

was sufficiently involved in The Lube King's activities such that requiring her to stand trial in New Hampshire would comport with "traditional notions of fair play and substantial justice."

The Court believes that the submitted materials demonstrate that King was sufficiently involved in the disposal of waste oil at the Site to make a <u>prima facie</u> case for jurisdiction.  Defendant concedes that she lived and worked in New Hampshire during the relevant years, and that the business she worked for disposed of waste oil at the Site.  The documents submitted by Plaintiffs indicate that, at least at times, King was directly involved in the disposal of The Lube King's waste oils, even to the point of executing a signature line that identified her as "Generator," and certifying to the propriety and legality of the transaction.  42 U.S.C. § 9607(a)(3), imposes liability on "covered persons," including:

> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances.

42 U.S.C. § 9607(a)(3).  While the documents proffered by the Plaintiffs may prove ultimately to be insufficient to establish liability, they are adequate to make out a <u>prima facie</u> case for the Court's exercise of jurisdiction.  The Court's conclusion is

further strengthened by the overall reasonableness of the exercise of jurisdiction in this case.

   B.   Gestalt Factors

   In Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985), the Supreme Court broke down the 'overall reasonableness and fundamental fairness' prong of the jurisdiction test into multiple areas of inquiry that have come to be known as the Gestalt factors, meaning that no individual area should be determinative, but that multiple factors must be balanced and integrated into a whole analysis.  These factors are:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 209 (1st Cir. 1994).

       1.   The Burden on Defendant

   Requiring Defendant King to travel from Florida to New Hampshire, a state where she lived for many years, does not seem to pose a significant burden.  King cites her advanced age of sixty; however, that is an age when many people are still quite able and eager to travel.

-10-

2.    The Other Factors

The inconvenience to Defendant of traveling from Florida to New Hampshire is more than offset by the weight of the remaining Gestalt factors, all of which tilt heavily in favor of a New Hampshire forum.   New Hampshire's strong sovereign interest in protecting its lands and its citizenry provides it with an indisputable stake in overseeing litigation that will result in the clean-up of a toxic superfund pollution site within its boundaries. The compelling interests of the forum state in an environmental clean-up case were expressed convincingly in a Rhode Island CERCLA case which pointed out that "the nature and significance of the state's interest may have a bearing on the nature and extent of the necessary contacts."   O'Neil v. Picillo, 682 F. Supp. 706, 717 (D.R.I. 1988) (citing Hanson v. Denckla, 357 U.S. 235, 252 (1958)). The Picillo Court continued,

> Certainly Rhode Island's interest in adjudicating this suit could hardly be more compelling.  In addition to the state's recognized "significant interest in redressing injuries that actually occur within the State," Rhode Island has an extraordinarily strong sovereign interest in providing a forum for actions concerning injury to land within its borders, and for actions which seek recovery of public monies expended to protect such land.

682 F. Supp. at 717-718 (quoting Violet v. Picillo, 613 F. Supp. 1563, 1579 (D.R.I. 1985)).  The forum's interest is compounded by the fact that litigation concerns "volatile and inherently dangerous toxic substances."   682 F. Supp. at 718.   As for

requiring out-of-staters to appear in the forum state, the <u>Picillo</u>

Court concluded:

> Additionally, the fact that the non-resident generators
> operate in a nationally regulated industry increases the
> significance of the contact with the forum.  As one court
> has put it, "under CERCLA, a generator-defendant can
> reasonably anticipate being haled into court in any state
> in which [its] hazardous substances . . . are found."

<u>Id.</u> at 718 (quoting <u>United States v. Conservation Chem. Co.</u>, 619 F.

Supp. 162, 249 (D. Mo. 1985)).  For all these same reasons, this

Court holds that its exercise of jurisdiction over Defendant is

consistent with "traditional notions of fair play and substantial

justice," and thus, with the requirements of the Due Process

Clause, as set forth in <u>Int'l Shoe</u>, 326 U.S. at 316 (internal

quotation marks and citation omitted).  Consequently, the Court's

service of process on Defendant comports with New Hampshire's long-

arm statute, N.H. Rev. Ann. Stat. § 510:4, and with Fed. R. Civ. P.

4(k)(1)(A).

VI.  Conclusion

For the reasons stated above, this Court denies Defendant's

Motion to Dismiss for lack of personal jurisdiction.

It is so ordered.


/s/ William E. Smith
William E. Smith
United States District Judge
Date: December 7, 2010